**R23 LAWAPC**
Peng Shao (SBN 319624)
peng@r23law.com
Jared Walder (SBN 310587)
jared@r23law.com
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Phone: (888) 533-2948

**MORROW NI LLP**
Jing He (SBN 352460)
Jing@moni.law
Ryan McMenamin (*Pro Hac Vice Forthcoming*)
ryan@moni.law
Sherry Yu (*Pro Hac Vice Forthcoming*)
sherry@moni.law
41 Madison Ave, 31st Floor
New York, NY 10010
Phone: (773) 543-3223

*Attorneys for Plaintiff Luke Burton*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LUKE BURTON individually, and on behalf of all others similarly situated.,** | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| **ALASKA AIRLINES INC.,** | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

COMPLAINT - 1
CLASS ACTION
Case No. _____

## I.     INTRODUCTION

1.     Plaintiff brings this class action lawsuit against Alaska Airlines, Inc. ("Alaska Airlines" or "Defendant") for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment/restitution, and violating the consumer protection laws of California, Nevada, Arizona, Utah, and Washington.

2.     In September 2024, Alaska Airlines engaged in unfair and deceptive practices by unilaterally and fundamentally altering the terms of its Flight Pass program, a subscription service marketed as a cost-effective solution for frequent travelers (the "Program").

3.     The Program required its subscribers (the "Subscribers") to pay a non-refundable monthly fee for 12 months to Defendant without the ability to terminate.  In exchange, the Subscribers were eligible to receive credits that entitled them to a fixed number of flights per month for the year.[1]

4.     However, Alaska Airlines drastically reduced the Program's core benefit in September 2024, cutting the number of guaranteed flight redemptions in half, while retaining Subscribers' payments.

5.     This breached the terms of the parties' agreement, and also constitutes unfair and deceptive practices under the consumer protection statutes of the relevant states, causing significant harm to Plaintiff and other similarly situated Subscribers.

6.     This all happened on or around the same time as Defendant's lucrative $1.9 billion deal to acquire another airline.  Upon information and belief, Alaska Airlines made this decision to unjustly enrich itself by unilaterally altering the Program's terms, prioritizing its financial interests over the commitments made to the Program's Subscribers.

---

[1] To enhance its marketability, the Program promised an improved booking experience, exclusive low-cost fares for additional flights, and complimentary seat selection. Yet, for many users, including Plaintiff, this proved to be a materially different reality. The booking experience was not enhanced; instead, users encountered a cumbersome and difficult-to-navigate platform. This platform, and the subscription management underpinning the Program, was managed by a third-party vendor, Recurly, which contributed to its reported unreliability. Moreover, the supposed "exclusive" low-cost fares were frequently undercut by cheaper flight options available on other platforms, and the "benefit" of free seat selection was merely a standard inclusion for most Alaska Airlines main cabin fares, effectively nullifying its value as a unique Program advantage.

CLASS ACTION COMPLAINT - 1
Case No. _____

7.     In other words, Plaintiff and other proposed class members made long-term travel plans based on the contractually guaranteed expectation to receive a fixed number of flights per month for at least 12 months.  Instead, Alaska Airlines unilaterally breached this contract and caused actual harm in an effort to unjustly enrich itself.

8.     Plaintiff and other proposed class members seek redress for common law breach of contract, for restitution under an unjust enrichment theory, and under the consumer protection laws of California, Nevada, Arizona, Utah, and Washington for Alaska Airlines' unlawful and deceptive practices. Plaintiff and other proposed class members seek recovery including monetary damages, restitution, and injunctive relief to prevent further harm to consumers.

## II.     PARTIES

9.     Plaintiff Luke Burton, a natural person residing in California, entered into a contract with Alaska Airlines by subscribing to its Flight Pass program on July 29, 2024. Alaska Airlines subsequently breached the terms of this contract and violated applicable consumer protection statutes through its unilateral alteration of the Program, causing Plaintiff Burton to suffer damages.

10.     Defendant Alaska Airlines, Inc., is a corporation headquartered in Seattle, Washington, engaged in providing air transportation services. Defendant operates flights throughout the United States, including in California, Nevada, Arizona, Utah, and Washington, and actively markets its services to residents of these states.

## III.     JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because: (1) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (2) the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant; and (3) the Class Members number in the many hundreds if not thousands or tens of thousands, making joinder impracticable.

12.     This Court has personal jurisdiction over Alaska Airlines because Alaska Airlines conducts substantial business in California, Nevada, Arizona, Utah, and Washington, including offering the Program to residents of these states.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), and (c) because, during the relevant period, Alaska Airlines resided, transacted business, was found, or had agents in this District; a substantial part of the events or omissions giving rise to these claims occurred in this District; and a substantial portion of the affected interstate trade and commerce discussed herein was carried out in this District.

## IV.    BACKGROUND

### A.    The Flight Pass Program

14.     On or about February 2022, Alaska Airlines launched the Flight Pass program, a subscription service marketed as a cost-effective solution that provided flexibility for frequent travelers.

15.     Under the terms of the Alaska Airlines Flight Pass program, customers committed to a 12-month subscription, paid through recurring monthly installments. This commitment provided a predetermined number of annual roundtrip flight credits.

16.     Plaintiff Luke Burton subscribed to the Flight Pass program, securing twenty-four annual roundtrip flight credits (two flights a month) at a monthly rate of $189.

17.     To lock in revenue, the Flight Pass Program's Terms and Conditions explicitly stated that the subscription had a *mandatory* 12-month term, during which it could not be canceled and was non-refundable. Subscribers were required to pay 12 monthly, automated payments at the price agreed upon at sign-up.  This meant that the advertised $189 per month was really an annual commitment of $2,268.

### B.    The Flight Pass Program's Operational Flaws and Undisclosed Limitations

18.     *Misleading Pricing Structure and Value Proposition:* The Program was marketed as providing a "fixed rate" for flights, implying predictable and consistent costs. However, in practice, the monthly subscription fee functioned more akin to pre-purchased vouchers for discounted fares, rather than a true fixed-rate model, as Subscribers were still required to pay additional taxes, fees, and often "premium charges" for desirable flights. This structure undermined the expectation of a clear, upfront fixed cost.

CLASS ACTION COMPLAINT - 3
Case No. _____

19.    *Cumbersome Booking Process*: The Flight Pass program's booking process presented significant and recurring obstacles, consistently undermining its advertised simplicity. Subscribers navigated a confusing credit-based system and were routed through an interface that managed payments and subscription billing via Recurly, a third-party platform. This integration often required Subscribers to manually enter payment information for every single reservation, regardless of a flight's nominal $0.01 base fare. Moreover, the system's susceptibility to error frequently left reservations stranded on hold, necessitating frustrating and time-consuming calls to Alaska Airlines customer service merely to complete the intended transactions.

20.    *Persistent Online Booking Failures and Forced Phone Bookings*: The Program's online booking platform frequently malfunctioned, generating error messages such as "We cannot process your request now. Sorry for the inconvenience." These persistent errors, occurring across multiple devices and networks, rendered the website unusable for booking Flight Pass flights. As a direct consequence, Subscribers were forced to complete bookings via phone, often experiencing lengthy hold times.

21.    *Undue Burden of Phone Bookings with Opaque "Premium Charges"*:  When forced to book via phone due to online malfunctions, Subscribers encountered an additional burden: many desired flights incurred "premium charges" that were not readily apparent or comparison-shopped online.

22.    *Inability to Book Multiple Seats Together*: The Program's design required individual bookings for each traveler, even for companions on the same itinerary. This limitation prevented Subscribers from booking multiple seats together on a single reservation, a standard expectation for travelers.

23.    *Denial of Shared Elite Benefits for Companions*: Despite Alaska Airlines' representation in its Flight Pass FAQ that "[t]he same benefits Mileage Plan Elite members[2] have come to enjoy are also applicable to Flight Pass tickets," the Program's individual booking

---

[2] Mileage Plan Elite members: Participants in Alaska Airlines' Mileage Plan frequent flyer program who have earned various tiers of loyalty status (*e.g.,* MVP, MVP Gold, MVP Gold 75K) through their flight activity. These status tiers typically grant benefits such as free checked luggage, priority boarding, and complimentary upgrades, often applicable to the loyalty member and their companions on the same booking.

requirement directly precluded elite members from extending customary benefits—such as complimentary checked bags and cabin upgrades—to their traveling companions booked on Flight Pass, thereby diminishing the expected value of their loyalty status.

24.     *Restrictive Advance Booking Windows and Monthly Credit Limitations*: The Program required flights to be booked at least two weeks in advance. Compounding this, credits were typically issued on the first of each month, making it effectively impossible to book flights for the first two weeks of any given month using newly issued credits, unless a credit from a previous cycle was available.

25.     *Onerous and Punitive Change/Cancellation Policies*: The Program's policies on modifying or canceling booked flights were onerous and punitive, often resulting in a forfeiture of value for Subscribers. Changes to reservations were permitted only under strict conditions: new flights had to meet the original advance purchase requirements and fall within a narrow 90-day window from the initial booking. Though cancellations were allowed before a credit's expiration, the resulting redeposited credits were burdened with their original expiration date.

26.     *Punitive Forfeiture of Expired Credits and Limited eWallet Usability*: The most insidious aspect of the cancellation policy was the forfeiture of a credit if a cancellation occurred after its expiration. In such cases, Subscribers received only a non-refundable eWallet credit, which could only be applied towards standard Alaska Airlines airfare, separate from and inapplicable to any future Flight Pass bookings or subscriptions. This policy effectively imprisoned Subscribers within a system that systematically diminished the promised value of their subscription.

27.     *Deceptive "No Blackout Dates" Representation*: While the Program explicitly advertised no blackout dates, this representation was deceptive in practice. Alaska Airlines routinely imposed substantial "premium access fares" on popular routes and during desirable travel times, in addition to the standard taxes and fees. This practice effectively rendered many otherwise "accessible" flights unaffordable at the advertised low base fare, functionally acting as a hidden limitation or disguised blackout on the Program's true value, despite the "no blackout dates" claim.

28.     *Inaccurate Route Information*: Alaska Airlines provided inaccurate route information by displaying routes on the Program's map that were never actually available. The map was not updated live to reflect real available routes at any given moment, misleading consumers about the Program's offerings and creating false expectations about the destinations they could access.

**C.    Alaska Airlines' Misrepresentations and Omissions to Consumers**

29.     Alaska Airlines engaged in a pattern of deceptive marketing and material omissions regarding the Flight Pass Program, luring consumers into a subscription service that consistently failed to deliver on its promises. These misrepresentations and omissions include, but are not limited to:

a.    *Misrepresenting Fixed Rates and Exclusive Low-Cost Fares*: Alaska Airlines falsely advertised the Program as offering a "fixed rate" for flights and "exclusive low-cost fares." In reality, the monthly subscription functioned as a system of pre-purchased vouchers that still required additional taxes, fees, and often substantial premium charges for desirable flights. This structure not only undermined the expectation of a clear, upfront fixed cost but also meant that the purportedly "exclusive" fares were frequently undercut by cheaper options available on other platforms or even directly from Alaska Airlines for non-Program bookings.

b.    *Misrepresenting Booking Experience*: Alaska Airlines promised an "enhanced booking experience," yet delivered a cumbersome, error-prone online platform where payment and subscription management were handled by a third-party vendor, Recurly, contributing to significant user frustration and requiring frequent phone interventions, and failing to provide a seamless process for utilizing advertised benefits such as free seat selection and the application of Mileage Plan Elite benefits for companions.

c.    *Omissions Regarding Restrictive and Punitive Policies on Credits, Changes, and Cancellations*: Alaska Airlines failed to clearly disclose the restrictive and punitive nature of its policies concerning Flight Pass credits, changes, and cancellations.

CLASS ACTION COMPLAINT - 6
Case No. _____

This included the "use it or lose it" policy, where unused roundtrip flights did not carry over to subsequent months, and the forfeiture of expired credits upon cancellation, along with the limited usability of eWallet credits for future Flight Pass bookings. These critical undisclosed terms led to potential loss of value and trapped Subscribers.

    d.    *Misleading Route Information*: Alaska Airlines provided misleading route information by displaying routes on the Program's website and associated maps that, while technically available, were often only accessible at significantly higher "**premium access fares**" not prominently disclosed alongside the initial route display. This practice, despite the Program's general advertising of low base fares and "no blackout dates," misled consumers about the true cost and practical accessibility of the Program's offerings and created false expectations regarding the destinations they could access at the advertised value.

**D.    Unilateral Changes to the Program That Destroyed Its Promised Value**

30.    Even with the Program's mandatory 12-month term, Alaska Airlines marketed a false sense of security for the Program's subscribers. Specifically, the Program's terms provided that the price agreed upon at sign-up would remain unchanged for the duration of the membership term. Any changes would apply only to new sign-ups moving forward, not to existing Subscribers, creating a false sense of security for those already enrolled.

31.    Alaska Airlines announced that on October 1, 2024, it would "retire the current Flight Pass plan" and offered Subscribers the option to update their subscription to a 6-flights-per-year or 12-flights-per-year plan at a lower rate than new subscribers, regardless of how many months remained in their annual commitment. This change required Subscribers to contact Alaska Airlines by November 30, 2024, to lock in the new rates.

32.    Alaska Airlines' unilateral modification effectively _halved_ the value of the Program for existing Subscribers, who already agreed to pay monthly installments for the _entire_ year based on Alaska Airlines' original promises.

33.    Given the Program's mandatory 12-month requirement and rigid booking

inflexibility, Subscribers like Plaintiff were forced to make long-term travel plans. Accordingly, Alaska Airlines' unilateral decision further destroyed the Program's promised value beyond a simple reduction in available flights.

**E.      Harm to Plaintiff and Proposed Class Members**

34.    Plaintiff and Class Members relied on Alaska Airlines' representations when purchasing the Flight Pass program, and made travel plans for the entire year as required by the Program.

35.    Alaska Airlines' unilateral changes deprived Plaintiff Class Members of the benefits they were promised and paid for, forcing them to incur additional costs to book flights that were no longer covered under the revised terms, and make significant alterations to their existing travel plans.

36.    Alaska Airlines' conduct has caused significant financial harm to Plaintiff and Class Members, who are now left with a service that is far less valuable than what they were promised.

37.    As stated on Alaska Airlines' official Flight Pass webpage,[3] as of the date of this complaint, the Program advertises "[a]ll flights offered by Alaska Airlines within California,



_____

[3] Alaska Airlines, *Flight Pass*, Alaska Airlines, https://subscriptions.alaskaair.com/flightpass/ (last visited [Jun. 2., 2025]).

Nevada, Arizona, and Utah are accessible with Flight Pass." This implicitly includes interstate flights between California and each of these other states, offering access to Alaska Airlines' full range of nonstop routes within these four states.

38.     Class Members used Flight Pass to fly among certain airports in California and the other states included in the Flight Pass program.

## V.     CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action on behalf of himself and, under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), as representatives of a class and subclass defined as follows:

- As to all counts other than IV, VIII, and IX below, all persons and entities residing in the United States who, directly or through an agent, subscribed to the Flight Pass program and were harmed by Alaska Airlines' unilateral changes to the Program's terms in September 2024.

- As to counts IV, VIII, and IX below, all persons and entities residing in Arizona, Nevada, or Utah, respectively, who, directly or through an agent, subscribed to the Flight Pass program and were harmed by Alaska Airlines' unilateral changes to the Program's terms in September 2024.

40.     **Numerosity.** The Class contains members so numerous that separate joinder of each member of the class is impractical. Plaintiff does not know the exact size of the Class but believes that there are at least thousands of Class Members geographically dispersed throughout the specified states.

41.     **Typicality.** Plaintiff's claims are typical of the Class. Like the Class, Plaintiff purchased a Flight Pass subscription and was harmed by Alaska Airlines' unilateral change to the Program's terms.

42.     **Adequacy.** Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the Class. Accordingly, by proving his own claims, Plaintiff will prove other Class Member claims as well.

43.     **Commonality.** There are questions of law and fact common to the Class. Common questions of law and fact include, without limitation:

- Whether Alaska Airlines' marketing and sale of the Flight Pass program contained misrepresentations or omissions material to consumers in California, Nevada, Arizona, Utah, and Washington;

- Whether Alaska Airlines' unilateral change to the Flight Pass program's terms constitutes an unfair or deceptive act or practice under the consumer protection statutes of California, Nevada, Arizona, Utah, and Washington;

- Whether Alaska Airlines violated the consumer protection statutes of California, Nevada, Arizona, Utah, and Washington;

- Whether Alaska Airlines breached its contracts with Plaintiff and Class Members by unilaterally altering the Program's terms and benefits;

- Whether Alaska Airlines breached the implied covenant of good faith and fair dealing with Plaintiff and Class Members;

- Whether Alaska Airlines was unjustly enriched at the expense of Plaintiff and Class Members; and,

- The nature and extent of damages, restitution, and injunctive relief needed to reasonably compensate Plaintiff and the Class.

44.    **Predominance and Superiority**. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the Class. For example, individual adjudication would create a risk that violation of a given state's consumer protection statute is found for some members of the Class, but not others.

45.    Common questions of law and fact predominate over any questions affecting only individual members of the Class. These common legal and factual questions arise from certain central issues which do not vary among Class Members, and which may be determined without reference to the circumstances of any individual member of the Class. For example, a core liability question is common: whether Alaska Airlines' unilateral change to the Flight Pass program terms constitutes an unfair or deceptive practice under the relevant state laws.

46.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would

be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. CAUSES OF ACTION

<u>COUNT I: BREACH OF CONTRACT</u>

47.    The foregoing paragraphs are incorporated by reference as though fully set forth herein.

48.    Plaintiff and Class Members, including those in California, entered into valid and enforceable annual contracts with Alaska Airlines for the Flight Pass program. Under these contracts, Alaska Airlines promised to provide a specific number of flights (*e.g.,* two guaranteed flights per month for certain plans) for a 12-month subscription period in exchange for agreed-upon payments.

49.    Plaintiff and Class Members performed all, or substantially all, of their obligations under the contracts, including but not limited to making their subscription payments.

50.    Alaska Airlines breached these contracts, including those governed by California law, by unilaterally changing the material terms of the Flight Pass program in or around September 2024. Specifically, Alaska Airlines substantially reduced the number of flights available to Subscribers (*e.g.,* from two per month to one per month for certain plans) while retaining the payments made by Subscribers based on the original, more favorable terms.

51.    This unilateral modification of a core term of the agreement constitutes a breach of contract.

52.    As a direct and proximate result of Alaska Airlines' breach of contract, Plaintiff and Class Members have sustained significant losses, costs, damages, and expenses, including but not limited to the diminished value of their subscriptions and the costs of obtaining alternative transportation. The full extent of these damages is to be proven at trial.

<u>COUNT II: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (CALIFORNIA LAW)</u>

53.    The foregoing paragraphs are incorporated by reference as though fully set forth herein.

54.    Plaintiff and Class Members bring this claim under California law.

55.    Under California law, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This covenant requires that neither party do anything that will injure the right of the other to receive the benefits of the agreement.

56.    Plaintiff and Class Members entered into contracts with Alaska Airlines for the Flight Pass program.

57.    Plaintiff and Class Members fulfilled, or were ready, willing, and able to fulfill, their obligations under these contracts.

58.    Alaska Airlines breached the implied covenant of good faith and fair dealing by, among other things:

    a.    Unilaterally and arbitrarily altering the fundamental terms of the Flight Pass program mid-subscription, thereby depriving Plaintiffs and Class Members of the essential benefits they bargained for, specifically the guaranteed number of monthly flights.

    b.    Implementing these changes in a manner that frustrated the core purpose of the Flight Pass program for existing subscribers, which was to lock in a certain number of flights at a predictable cost.

    c.    Failing to provide a fair or adequate remedy for the reduction in service, while retaining payments made for the originally promised level of service.

    d.    Acting in a manner that was objectively unreasonable and contrary to the justifiable expectations of Plaintiff and Class Members under the contracts.

59.    Alaska Airlines' actions were not an honest mistake, but rather a conscious and deliberate decision that unfairly injured the rights of Plaintiff and Class Members to receive the full benefits of their Flight Pass subscriptions.

60.    As a direct and proximate result of Alaska Airlines' breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have been damaged in an amount to be proven at trial, including the loss of the value of their subscriptions and other consequential damages.

1    COUNT III: UNJUST ENRICHMENT / RESTITUTION (CALIFORNIA LAW)

2    61.    The foregoing paragraphs are incorporated by reference as though fully set forth

3    herein.

4    62.    Plaintiff and Class Members bring this claim under California law, seeking

5    restitution.

6    63.    As a result of the conduct described above, Alaska Airlines received and retained

7    benefits from Plaintiff and Class Members, including subscription payments for the Flight Pass

8    program.

9    64.    Specifically, Plaintiff and Class Members paid for a Flight Pass program that

10   promised a certain number of monthly flights and other associated benefits. Alaska Airlines

11   unilaterally reduced these benefits (e.g., by halving the number of guaranteed flights) but retained

12   the full payments made by Subscribers who had enrolled based on the original, more valuable

13   terms.

14   65.    Alaska Airlines was thereby unjustly enriched at the expense of Plaintiff and Class

15   Members by receiving payments for services it subsequently failed to deliver as promised.

16   66.    It is inequitable and unjust for Alaska Airlines to retain these benefits without

17   providing the full value of the services for which Plaintiff and Class Members paid.

18   **67.**    Plaintiff and Class Members are entitled to restitution from Alaska Airlines of all

19   amounts wrongfully obtained, including the difference in value between the Program as promised

20   and as delivered, in an amount to be proven at trial.

21   COUNTS IV-X: VIOLATIONS OF STATE CONSUMER PROTECTION ACT

22   68.    The foregoing paragraphs are incorporated by reference as though fully set forth

23   herein.

24   69.    Members of the Class used Flight Pass to fly between California and the other states

25   included in the Flight Pass program.

26   70.    Alaska is based in Washington state.

27   71.    These counts are brought on behalf of Plaintiff and the Class for violations of the

28   following state consumer protection statutes:

CLASS ACTION COMPLAINT - 13
Case No. _____

| State | Statute |
|---|---|
| **Arizona** | Ariz. Rev. Stat. §§ 44-1521, *et seq*. (COUNT IV) |
| **California** **(Nationwide Class)** | Cal. Bus. & Prof. Code § 17200, *et seq*. (Unfair and deceptive practices) (COUNT V); Cal. Bus. & Prof. Code §17500, *et seq*. (False advertising) (COUNT VI); Cal. Civ. Code §1750 *et seq*. (California Consumers Legal Remedies Act, or CLRA, specifically, a § 1770 claim for injunctive relief only[4]) (COUNT VII) |
| **Nevada** | Nev. Rev. Stat. § 41.600, *et seq*. (COUNT VIII) |
| **Utah** | Utah Code. Ann. § 13-11-175, *et seq*. (COUNT IX) |
| **Washington** **(Nationwide Class)** | Wash. Rev. Code § 19.86.010, *et seq*. (COUNT X) |

72.     Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers. Alaska Airlines' conduct, including marketing and selling the Program with material misrepresentations and omissions and subsequently implementing a unilateral, fundamental change to the Program's terms while retaining customer payments, violates each statute's prohibitions.

73.     Alaska Airlines' deceptive and unfair conduct was a substantial factor in Plaintiff's purchase decision and the purchase decision of Class Members. Alaska Airlines' conduct was misleading to a reasonable consumer, and Plaintiff and Class Members reasonably relied on Alaska Airlines' representations and omissions regarding the Program's terms and benefits.

---

[4] Plaintiff presently seeks injunctive relief under the CLRA pursuant to California Civil Code § 1782(d). Plaintiff has served, or will serve, Defendant with notice and demand for correction under § 1782(a), and reserves the right to amend this Complaint to seek damages should Defendant fail to comply within the statutory 30-day period.

74.    Alaska Airlines intended that Plaintiff and the Class Members would rely on its representations and omissions regarding the Program when purchasing their subscriptions.

75.    For applicable statutes, Plaintiff will provide notice and demand for correction as required by law.

76.    Plaintiff and Class Members were injured as a direct and proximate result of Alaska Airlines' conduct because (a) they would not have purchased the Flight Pass subscription if they had known that Alaska Airlines would unilaterally reduce the promised benefits while retaining their payment, and/or (b) they overpaid for the subscription because the value received was substantially less than the value promised due to Alaska Airlines' unfair and deceptive conduct. In this way, Plaintiffs and the proposed Class members have suffered an ascertainable loss, in an amount to be determined at trial.

## VII.    JURY DEMAND

77.    Plaintiff demands a jury trial on all issues so triable.

## VIII.    PRAYER FOR RELIEF

78.    Plaintiff seeks the following relief for himself and the Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, including statutory, treble, and punitive damages where applicable (but not under the CLRA);
- Restitution;
- Disgorgement, and other equitable relief;
- Pre- and post- judgment interest;
- An injunction prohibiting Alaska Airlines' deceptive and unfair conduct, as allowed by law.
- Reasonable attorneys' fees and costs, as allowed by law; and
- Such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED.**

CLASS ACTION COMPLAINT - 15
Case No. _____

Dated: July 16, 2025                    Respectfully submitted,


**R23 LAWAPC**

By: /s/ *Peng Shao*_____
Peng Shao


**MORROW NI LLP**

By: /s/   Jing He _____
Jing He
*Attorneys for Plaintiff*

## ELECTRONICALLY STORED INFORMATION REQUEST

This notice is to demand that you preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to any issues in the above-entitled matter. This specifically includes, but is not limited to, all information pertaining to the above matter, including specifically all recordings of any telephone communication between your company and Plaintiff. As used in this request, "you" and "your" or "your client" refers to your organizations, and its predecessors, successors in interest, assignees, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, employees, servants, agents, attorneys, and accountants.

Much of the information subject to disclosure or responsive to discovery is stored on your client's current and former computer systems and other media and devices (such as: personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (for example and not as an exclusive list) potentially relevant information whether electronically, magnetically or optically stored.

This preservation obligation extends beyond ESI in yours or your client's care, possession or custody and includes ESI in the custody of others that is subject to your client's direction or control. You must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your client's obligation to do so, and you must try to secure their compliance.