MARK W. ROBERTSON (SBN 200220)
mrobertson@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, 17th Fl.
New York, New York 10019
T: +1 212 326 2000
F: +1 212 326 2061

MATTHEW KAISER (SBN 304714)
mkaiser@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Fl.
Los Angeles, CA 90071
T: +1 213 430 6000
F: +1 213 430 6407

*Attorneys for Defendant Alaska Airlines, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LUKE BURTON individually, and on behalf of all others similarly situated., <br><br> Plaintiff, <br><br> vs. <br><br> ALASKA AIRLINES, INC., <br><br> Defendant. | Case No. 3:25-cv-06156-JSC <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:   September 25, 2025 <br> Time:   10:00 a.m. <br> Judge:  Hon. Jacqueline Scott Corley |

# NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

## TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on September 25, 2025 at 10:00 a.m. in Courtroom 8, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Jacqueline Scott Corley, Defendant Alaska Airlines, Inc., will and does move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Complaint filed by Plaintiff Luke Burton. As detailed in the accompanying Memorandum of Points and Authorities, Counts I and II of Plaintiff's complaint (for breach of contract and breach of the implied covenant of good faith) fail to state a claim upon which relief can be granted and Counts III-X (for unjust enrichment and violation of various state consumer protection statutes) are preempted by the Airline Deregulation Act. In addition, Plaintiff fails adequately to plead his unjust enrichment and consumer fraud claims and also lacks standing to assert several of his consumer fraud claims.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities; the Declaration of Taylor Putnam; any oral argument the Court may permit; and all pleadings and papers on file with the Court in this action or other matters as may be presented to the Court at or before the hearing of this Motion.

Dated: August 19, 2025

O'MELVENY & MYERS LLP

By: /s/Mark W. Robertson
Mark W. Robertson
Matthew Kaiser

*Attorneys for Defendant Alaska Airlines, Inc.*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND .....................................................................................................................2

III. ARGUMENT ...........................................................................................................................3

    A. The Airline Deregulation Act Preempts All State Law Claims Other Than Those Seeking to Enforce an Airline's Self-Imposed Obligations. .........................3

        i. The ADA Preempts Plaintiff's Consumer Fraud Claims (Counts IV-X). ...........................................................................................................4

        ii. The ADA Preempts Plaintiff's Unjust Enrichment Claim (Count III). ..........................................................................................................6

    B. Plaintiff's Breach of Contract and Implied Covenant Claims (Counts I and II) Fail as a Matter of Law. ........................................................................................7

        i. Plaintiff's Breach of Contract Claim Fails. ..................................................8

        ii. Plaintiff's Breach of the Implied Covenant Claim Fails. .............................9

    C. Plaintiff's Unjust Enrichment and Consumer Fraud Claims (Counts III-X) Fail For Additional Reasons. ..................................................................................10

        i. Plaintiff's Consumer Fraud Allegations Do Not Satisfy Rule 9(b) (Counts IV-X). ...........................................................................................10

        ii. Plaintiff Lacks Standing to Assert Claims Under the Laws of Arizona, Nevada, Utah, and Washington (Counts IV and VIII-X). .............11

        iii. Plaintiff Lacks Standing to Assert a Nationwide Class under California law (Counts V-VII). ...................................................................11

        iv. Plaintiff's Unjust Enrichment Claim (Count III) is Insufficiently Plead. ..........................................................................................................12

IV. CONCLUSION ......................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Airlines, Inc. v. Carey*,
   395 F. App'x 476 (9th Cir. 2010) .................................................................................... 6

*Am. Airlines, Inc. v. Wolens*,
   513 U.S. 219 (1995) ................................................................................................. passim

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................................... 3

*Banga v. Gundumolgula*,
   2013 WL 3804046 (E.D. Cal. July 19, 2013) ................................................................. 6

*Brown v. United Airlines, Inc.*,
   720 F.3d 60 (1st Cir. 2013) .............................................................................................. 6

*Byler v. Air Methods Corp.*,
   823 F. App'x 356 (6th Cir. 2020) .................................................................................... 7

*Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*,
   2 Cal. 4th 342 (1992) ....................................................................................................... 9

*Charas v. Trans World Airlines, Inc.*,
   160 F.3d 1259 (9th Cir. 1998) ......................................................................................... 3

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ....................................................................................................... 11

*Debari v. Winix Glob. LLC*,
   2025 WL 56414 (N.D. Cal. Jan. 9, 2025) ................................................................ 11, 12

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ...................................................................................... 12

*Effinger v. Ancient Organics LLC*,
   657 F. Supp. 3d 1290 (N.D. Cal. 2023) ........................................................................ 12

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) .......................................................................... 10

*Federal Deposit Ins. Corp. v. Dintino*,
   167 Cal. App. 4th 333 (2008) ......................................................................................... 6

*Fernald v. Sw. Airlines Co.*,
   2011 WL 13254382 (S.D. Cal. Sept. 28, 2011) .............................................................. 6

*Forrett v. West Thomas Partners, LLC*,
   2023 WL 11991452 (N.D. Cal. Mar. 27, 2023) ............................................................ 11

*Gonzalez v. Planned Parenthood of L.A.*,
   759 F.3d 1112 (9th Cir. 2014) ......................................................................................... 3

*Hakimi v. Societe Air France, S.A.*,
   2018 WL 4826487 (N.D. Cal. Oct. 4, 2018) ............................................................... 6, 7

*Hindsman v. General Motors LLC*,
   2018 WL 2463113 (N.D. Cal. June 1, 2018) ................................................................ 12

*In re Apple and AT&T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ........................................................................ 13

*In re Arris Cable Modem Consumer Litig.*,
   2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ................................................................... 10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Finjan Holdings, Inc.*,
58 F.4th 1048 (9th Cir. 2023) ................................................................................................. 8

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................................... 7

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
2020 WL 6270948 (N.D. Cal. Oct. 23, 2020) ........................................................................ 11

*In re NJOY, Inc. Consumer Class Action Litig.*,
2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ...................................................................... 10

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
467 F. Supp. 3d 849 (N.D. Cal. 2020) ..................................................................................... 9

*Jones v. Micron Tech. Inc.*,
400 F. Supp. 3d 897 (N.D. Cal. 2019) ................................................................................... 11

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ......................................................................................... 10, 11

*Lawrence v. Wells Fargo Bank, N.A.*,
2014 WL 2705425 (N.D. Cal. June 13, 2014) ........................................................................ 9

*Lewis v. Google LLC*,
851 F. App'x 723 (9th Cir. 2021) ............................................................................................ 8

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004) ................................................................................................ 12

*McClain v. Octagon Plaza, LLC*,
159 Cal. App. 4th 784 (2008) .................................................................................................. 9

*Miller v. C.H. Robinson Worldwide, Inc.*,
976 F.3d 1016 (9th Cir. 2020) ............................................................................................ 4, 6

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ................................................................................................................ 3

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
813 F.3d 718 (9th Cir. 2016) ................................................................................................... 5

*Nguyen v. Stephens Inst.*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021) ................................................................................ 12

*Nw., Inc. v. Ginsberg*,
572 U.S. 273 (2014) ......................................................................................................... passim

*Pampena v. Musk*,
705 F. Supp. 3d 1018 (N.D. Cal. 2023) .............................................................................. 7, 8

*Sanchez v. Aerovias De Mexico, S.A. De C.V.*,
590 F.3d 1027 (9th Cir. 2010) ................................................................................................. 6

*Shrem v. Sw. Airlines Co.*,
2016 WL 4170462 (N.D. Cal. Aug. 8, 2016) ....................................................................... 6, 7

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ................................................................................................. 8

*Steiner v. Thexton*,
48 Cal. 4th 411 (2010) ....................................................................................................... 1, 9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ................................................................................................ 7

*Walter v. Adaptive Insights, Inc.*,
  2019 WL 13201942 (N.D. Cal. July 10, 2019) ................................................................... 10

*Zeichner v. Nord Sec. Inc.*,
  2024 WL 4951261 (N.D. Cal. Dec. 2, 2024) ................................................................ 12, 13

*Zhang v. Twitter Inc.*,
  2023 WL 5493823 (N.D. Cal. Aug. 23, 2023) .................................................................. 7, 8

**Statutes**

49 U.S.C. § 40102 ....................................................................................................................... 3

49 U.S.C. § 41713 ....................................................................................................................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Plaintiff Luke Burton is an Alaska Airlines, Inc. customer who subscribed to Alaska's "Flight Pass" subscription program (the "Program"). The Program allows customers to pay a fixed monthly fee in exchange for flight passes offering access to certain Alaska flights at reduced rates. Plaintiff alleges these flights were more expensive than he expected, and it was harder to use his flight passes than Alaska represented. He also alleges Alaska impermissibly terminated the Program in the fall of 2024. Plaintiff asserts claims for violation of consumer fraud statutes of five states and for unjust enrichment. He also asserts claims for breach of contract and breach the implied covenant of good faith and fair dealing arising from Alaska's termination of the Program.

Plaintiff's attempt to assert state law claims is preempted by the Airline Deregulation Act ("ADA"). The ADA broadly preempts any state-law claim related to rates, routes, or services of an air carrier—with the sole exception being a claim based on a carrier's own, self-imposed undertakings. The flight credits at issue here relate to both airline rates (because they reduce the prices of flights) and services (because they allow passengers to board flights). *See Nw., Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014). In two directly-on-point decisions, the Supreme Court held the ADA preempts any state-law claim that attempts to prescribe the marketing of frequent flier programs or mandate a passenger continue to be permitted to use them—exactly what Plaintiff seeks here. *See id.*; *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995).

Plaintiff's breach of contract and implied covenant claims for alleged improper termination of the Program survive only if they fall within the ADA's narrow exception for claims to enforce an airline's self-imposed obligations. They do not. The governing contract expressly provides "Alaska Airlines' Flight Pass program may be modified or terminated by Alaska Airlines at any time," and "Alaska Airlines reserves the right to cancel subscriptions for any reason and prevent future sign-ups for any reason." *See* Declaration of Taylor Putnam Exhibit ("Ex.") A at 1, 5. Thus, Alaska acted entirely consistent with the governing contract. And because "the implied covenant does not trump an agreement's express language," that claim likewise fails. *Steiner v. Thexton*, 48 Cal. 4th 411, 419-20 (2010). Nor can the implied covenant

override express contractual terms without being preempted by the ADA.  *See Ginsberg*, 572 U.S. at 284.

Accordingly, for these reasons and those detailed below, Plaintiff's Complaint should be dismissed.  And because these deficiencies cannot be corrected, dismissal should be with prejudice.

## II. **BACKGROUND**

Alaska is a passenger airline that "operates flights throughout the United States."  Dkt. 1 ("Compl.") ¶ 10.  Around February 2022, Alaska established the Program.  *See id*. ¶ 14.  Customers who participated in the Program entered into a 12-month subscription.  *See id.* ¶ 15.  Each month, they paid a fee and received two Flight Passes that could be used to book certain Alaska flights at reduced rates.  *See id.* ¶¶ 14-16, 37; *see also* Ex. A at 2-3.[1]

The Program is governed by "Terms and Conditions" (the "Terms").  *See* Compl. ¶ 17.  At all relevant times, the Terms have expressly stated that "Alaska Airlines' Flight Pass program may be modified or terminated by Alaska Airlines at any time."  *See* Exs. A & B at 1.  The Terms have also always further explained that "Alaska Airlines reserves the right to cancel subscriptions for any reason and prevent future sign-ups for any reason."  *See* Ex. A at 5; Ex. B at 7.

In the fall of 2024, Alaska announced its plan to "retire the current Flight Pass plan" that provided two Flight Passes per month.  Compl. ¶ 31; *see also* Ex. C.  Subscribers were permitted to use any remaining Flight Passes they already paid for.  *See* Ex. C.  But they were otherwise released from their subscriptions and offered the option to subscribe to a version of the Program that provided one Flight Pass a month or one Flight Pass every other month at a reduced monthly rate.  *See id*.  Customers who chose not to re-subscribe to one of those options exited the Program "without penalty."  *See id*.

Plaintiff is a California resident who subscribed to the Program.  *See* Compl. ¶ 9.  He

---

[1] For purposes of this motion, Alaska treats Plaintiff's allegations as true—except to the extent they are contradicted by documents incorporated by reference into the Complaint.  *See infra* at 8-9.

claims Alaska breached its contract with him when it terminated the Program. *See id.* ¶¶ 50, 58. He also claims he encountered various, unexpected impediments when he tried to use his Flight Passes, such as unexpected black-out dates, booking problems, and taxes and fees. *See id.* ¶¶ 18-28. Based on these allegations, he brings claims for breach of contract and the implied covenant of good faith (Counts I-II), unjust enrichment (Count III), and for violation of various state consumer protection laws (Counts IV-X).

## III.  ARGUMENT

To survive a 12(b)(6) motion, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If "documents incorporated by reference into the complaint conflict with allegations in the complaint, [a court] need not accept those allegations as true." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (cleaned up).

### A.  The Airline Deregulation Act Preempts All State Law Claims Other Than Those Seeking to Enforce an Airline's Self-Imposed Obligations.

Congress enacted the ADA "[t]o ensure that the States would not undo federal deregulation" of the airline industry. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). The ADA includes a broad preemption clause providing that states "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b). A "price" is "a rate, fare, or charge." 49 U.S.C. § 40102(a)(39). "Services" include the "provision of air transportation." *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1266 (9th Cir. 1998).

The Supreme Court has analyzed the scope of ADA preemption three times. *See Ginsberg*, 572 U.S. at 284; *Wolens*, 513 U.S. at 228; *Morales*, 504 U.S. at 383. First, in *Morales*, the Supreme Court found the ADA had a "a broad pre-emptive purpose" and was meant to displace any state law claim "having a connection with or reference to airline rates, routes, or

services." 504 U.S. at 383-84 (internal quotations omitted). Then, in *Wolens*, the Supreme Court found the ADA preempted any claim that sought to "guide and police" airlines' rates, routes, and services that did "not simply give effect to bargains offered by the airlines and accepted by airline customers." *Wolens*, 513 U.S. at 228. The only narrow exception to preemption the Supreme Court identified was for state law claims "alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id*. The Supreme Court affirmed this distinction in *Ginsberg*, 572 U.S. at 280. It found the ADA preempted "[l]egal duties imposed ... by the common law" as well as by statute. *Id.* at 282. Again, the only exception is for a common law claim "that the parties voluntarily undertook." *Id.* at 285. Otherwise, state-law claims are preempted where, as here, they "'act[] immediately and exclusively upon' prices, routes, or services," or "the existence of a price, route or service is essential to the law's operation." *Miller v. C.H. Robinson Worldwide, Inc*., 976 F.3d 1016, 1022 (9th Cir. 2020) (citation omitted).[2]

Thus, here, the ADA preempts all of Plaintiff's claims except his breach of contract claim and arguably his breach of the implied covenant claim, both of which fail because the terms of the Program confirm Alaska has not breached the parties' agreement.

### i. The ADA Preempts Plaintiff's Consumer Fraud Claims (Counts IV-X).

The Supreme Court's decisions in *Wolens* and *Ginsberg* are directly on-point and mandate dismissal of Plaintiff's consumer fraud claims. *See Ginsberg*, 572 U.S. at 284; *Wolens*, 513 U.S. at 228. In both cases, the plaintiffs brought consumer fraud and common law claims challenging airlines' marketing of and termination of their frequent flyer programs. *See Wolens*, 513 U.S. at 225; *Ginsberg*, 572 U.S. at 284. These frequent flyer programs—like the Program—awarded customers credits that could be used to board flights. *See Wolens*, 513 U.S. at 228; *Ginsberg*, 572 U.S. at 284. The Supreme Court therefore found these programs were "connected to the airline's 'rates' because the program awards mileage credits that can be redeemed for tickets," and

---

[2] *Miller* interpreted the Federal Aviation Administration Authorization Act of 1994, which has a broad preemption provision modeled on the ADA. *See Miller*, 976 F.3d at 1022. Courts interpret the similar preemption language in both statutes the same way. *See id.*

"connected to 'services,' i.e., access to flights." *Ginsberg*, 572 U.S. at 284; *see also Wolens*, 513 U.S. at 226 (similar); *see also Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 728 (9th Cir. 2016) (noting Supreme Court has held "a frequent-flyer program" is "connected to both rates and services" under the ADA).[3]

Specifically, the Supreme Court found the *Wolens* plaintiffs' state consumer fraud claim was preempted because it sought to "guide and police the marketing practices" of the frequent flyer programs and "does not simply give effect to bargains offered by the airlines and accepted by airline customers." *Wolens*, 513 U.S. at 228. This conflicted with "the ADA's purpose to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services." *Id.* The Supreme Court found the *Ginsberg* plaintiff could not use state common law to challenge his termination from an airline's frequent flyer program because the only "reason for seeking reinstatement of his membership" was "to obtain reduced rates and enhanced services" provided by that program. *Ginsberg*, 572 U.S. at 285.

Just like in *Wolens* and *Ginsberg*, Plaintiff challenges Alaska's marketing and termination of a program providing credits that can be exchanged for flights. *See* Compl. ¶¶ 3, 72, 76. Plaintiff even challenges the same aspects of the Program the plaintiffs challenged in *Wolens* and *Ginsberg*—the imposition of purported black-out dates and seat restrictions that frustrated his use of flight credits, and the Program's termination. *See id.* ¶¶ 22, 27, 31. Plaintiff's Complaint makes expressly clear he is seeking to alter both (i) the prices Alaska charges for its flights and (ii) the way in which he could access airline services using Flight Passes. For example, Plaintiff claims Alaska should not have charged him certain taxes and fees for flights boarded with Flight Passes. *See* Compl. ¶¶ 18, 21, 29.a. That obviously relates directly to Alaska's prices. *See*

---

[3] There is no meaningful difference between the Program and the frequent flyer programs at issue in those cases. The programs at issue in those case and the Program "award[] mileage credits that can be redeemed for tickets." *Ginsberg*, 572 U.S. at 284. Indeed, the flight passes here are even more directly related to air travel. While frequent flyer miles can be "earned without consuming airline services" and "spent without consuming airline services," *id.* at 285, a Flight Pass can only be purchased and used for air travel, *see, e.g.*, Compl. ¶ 3.

*Sanchez v. Aerovias De Mexico, S.A. De C.V.*, 590 F.3d 1027, 1030 (9th Cir. 2010) (holding claim challenging undisclosed tourism tax related to prices because "[t]he ticketed price included the tourism tax and other fees and surcharges"); *see also Fernald v. Sw. Airlines Co.*, 2011 WL 13254382, at *2 (S.D. Cal. Sept. 28, 2011) ("[T]he case law … has repeatedly applied ADA preemption to claims involving fees, taxes, and other charges collected by airlines."). Similarly, Plaintiff claims the Flight Pass "service" he and subscribers received was "far less valuable than what they were promised." Compl. ¶ 36. *Ginsberg* and *Wolens* are clear that the ADA preempts regulation of flight credit programs because that is tantamount to regulating "access to flight[]" services. *Wolens*, 513 U.S. at 226; *see also Alaska Airlines, Inc. v. Carey*, 395 F. App'x 476, 478 (9th Cir. 2010); *Shrem v. Sw. Airlines Co.*, 2016 WL 4170462, at *3 (N.D. Cal. Aug. 8, 2016) (claims related to "credits from cancelled flights" preempted). Nor can Plaintiff rescind Alaska's termination of his Flight Pass benefits—"a claim that seeks reinstatement of frequent-flyer benefits has a forbidden 'connection with' air carrier services" under the ADA. *Miller*, 976 F.3d at 1024.

Accordingly, Counts IV-X, which are all brought under state consumer fraud statutes, are preempted by the ADA. *See Wolens*, 513 U.S. at 228; *see also Banga v. Gundumolgula*, 2013 WL 3804046, at *3 (E.D. Cal. July 19, 2013) ("Unfair business practice laws … have consistently been found preempted by the ADA.").

### ii. The ADA Preempts Plaintiff's Unjust Enrichment Claim (Count III).

Count III for "Unjust Enrichment/Restitution" under California law is preempted by the ADA for similar reasons. As this Court has explained, "[u]nder California law" unjust enrichment "is an obligation (not a true contract [ ]) created by the law without regard to the intention of the parties." *Hakimi v. Societe Air France, S.A.*, 2018 WL 4826487, at *4 (N.D. Cal. Oct. 4, 2018) (Corley, J.) (quoting *Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008)) (emphasis removed). Therefore, "[v]irtually by definition, unjust enrichment turns on sources external to any agreement between the parties—such as considerations of equity and morality—and is predicated on the *lack* of any agreement" between the parties. *Brown v. United Airlines, Inc.*, 720 F.3d 60, 71 (1st Cir. 2013). Because unjust enrichment claims "impose[] a

state-created obligation outside the parties' private agreement" they are preempted by the ADA. *Hakimi*, 2018 WL 4826487, at *4. For this reason, "courts have been unanimous in the view" that "claims for unjust enrichment are preempted by the ADA." *Byler v. Air Methods Corp.*, 823 F. App'x 356, 364 (6th Cir. 2020) (collecting cases).

Plaintiff's allegations expressly confirm his unjust enrichment claim seeks to "impose[] a state-created obligation outside the parties' private agreement" in violation of the ADA. *Hakimi*, 2018 WL 4826487, at *4. He alleges Alaska's conduct was "inequitable and unjust" under California law and thus he is "entitled to restitution … of all amounts wrongfully obtained." Compl. ¶¶ 66-67. The ADA preempts such state law policies that would enlarge the parties' agreement beyond their self-imposed obligations. *See, e.g.*, *Shrem*, 2016 WL 4170462, at *4. Accordingly, Plaintiff's unjust enrichment claim also fails and should be dismissed.

### B. Plaintiff's Breach of Contract and Implied Covenant Claims (Counts I and II) Fail as a Matter of Law.

In deciding a motion to dismiss, courts may look beyond the face of the complaint and consider documents under the "incorporation by reference" doctrine "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "This doctrine 'prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.'" *Pampena v. Musk*, 705 F. Supp. 3d 1018, 1037–38 (N.D. Cal. 2023) (citations omitted).

Exhibits A-C to the Declaration of Taylor Putnam are incorporated by reference into the complaint because they form the basis of Plaintiff's claims for breach of contract and breach of the implied covenant. Exhibits A and B are the Terms governing the Program at the time Plaintiff subscribed to the Program and immediately prior to the termination of Plaintiff's subscription. These exhibits are incorporated by reference because "they contain the contract terms … that were allegedly breached." *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813 (N.D. Cal. 2020); *see Zhang v. Twitter Inc.*, 2023 WL 5493823, at *3 (N.D. Cal. Aug. 23, 2023) (Twitter's terms and conditions were "properly subject to incorporation by reference" where

1 plaintiff's breach of contract claim was predicated on them) (Corley, J.).  Moreover, Plaintiff
2 expressly relies upon "the Flight Pass Program's Terms and Conditions," Compl. ¶ 17, and
3 repeatedly makes reference to the "terms" of the Program, *see, e.g.*, *id.* ¶¶ 2, 6, 15, 30.

4      Exhibit C is an email from Alaska announcing the retirement of the Program to which
5 Plaintiff subscribed.  This email is incorporated by reference because Plaintiff also cites to it in
6 his Complaint, selectively quotes from it, and relies on it as evidence of Alaska's alleged breach
7 of contract and the implied covenant.  *See* Compl. ¶ 31 (purporting to quote email); *Pampena*,
8 705 F. Supp. 3d at 1038-39.

### i. Plaintiff's Breach of Contract Claim Fails.

10      Plaintiff alleges Alaska breached the Terms of the Program by "retir[ing] the current
11 Flight Pass plan" on October 1, 2024 "regardless of how many months remained in [Plaintiff's]
12 annual commitment."  Compl. ¶ 31.  But the actual Terms—not Plaintiff's unsupported
13 characterization of them—control.  *See, e.g.*, *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1
14 (9th Cir. 2023) ("[W]here a complaint incorrectly summarizes or characterizes a legally operative
15 document … incorporated by reference in the complaint … the document itself is controlling.");
16 *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required
17 to accept as true conclusory allegations which are contradicted by documents referred to in the
18 complaint.").  And under the actual Terms, Alaska has the express right to modify, terminate, or
19 cancel the Program at any time.  *See id.*, Exs. A & B at 1 ("Alaska Airlines' Flight Pass program
20 may be modified or terminated by Alaska Airlines at any time."); Ex. A at 5 & Ex. B at 7
21 ("Alaska Airlines reserves the right to cancel subscriptions for any reason and prevent future
22 sign-ups for any reason.").

23      A provision giving parties unilateral discretion is enforceable under California law.  *See*
24 *Lewis v. Google LLC*, 851 F. App'x 723, 725 (9th Cir. 2021).  Moreover, here, the ADA
25 preempts state law to the extent it would "invalidate" Alaska's ability to "unilaterally to change
26 the terms of the contract" per its express terms.  *See Carey*, 395 F. App'x at 478.  As such,
27 because the Terms specifically authorize Alaska to modify, terminate, or cancel the Program,
28 Plaintiff does not plausibly allege that Alaska breached the Terms by terminating the Program.

And given the plain language of the Terms, Plaintiff cannot amend his Complaint to plausibly allege a breach. Accordingly, the Court should dismiss Plaintiff's breach of contract claim with prejudice. *See*, *e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 467 F. Supp. 3d 849, 855-56 (N.D. Cal. 2020) (dismissing breach of contract claim with prejudice where it was "not viable in light of the actual terms of the agreements [plaintiffs] allege were violated").

### ii. Plaintiff's Breach of the Implied Covenant Claim Fails.

To state a claim for breach of the implied covenant, "the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Lawrence v. Wells Fargo Bank, N.A.*, 2014 WL 2705425, at *9 (N.D. Cal. June 13, 2014) (citation and quotation omitted). Because "the implied covenant operates to protect the express covenants or promises of [a] contract ... [it] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties'] agreement." *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 806 (2008). In other words, "the implied covenant does not trump an agreement's express language." *Steiner v. Thexton*, 48 Cal. 4th 411, 419-20 (2010).

Plaintiff alleges Alaska breached the implied covenant by terminating the Program mid-subscription, which allegedly "frustrated the core purpose of the Flight Pass program," without providing "a fair or adequate remedy for the reduction in service" and "while retaining payments made for the originally promised level of service." Compl. ¶ 58; *see also id*. ¶¶ 30-33. But Alaska had the express right to terminate the Program at any time. *See* Section III.B.i, *supra*. Thus, Plaintiff seeks to prohibit Alaska "from doing that which is expressly permitted" by the Terms. *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992). Because California law precludes such a result, this claim should also be dismissed without leave to amend. *See id.* (implied covenant cannot "be read to prohibit a party from doing that which is expressly permitted by an agreement" because "implied terms should never be read to vary express terms"); *Walter v. Adaptive Insights, Inc.*, 2019 WL 13201942, at *2 (N.D. Cal. July 10, 2019) ("The contract's terms give [defendant] sole discretion and there can be no breach when the

contract expressly permits a party to act in its sole discretion and the party does so." (cleaned up)). And to the extent Plaintiff's implied covenant of good faith and fair dealing claim seeks to enforce something beyond Alaska's self-imposed obligations, it is preempted. *See Ginsberg*, 572 U.S. at 286.

### C. Plaintiff's Unjust Enrichment and Consumer Fraud Claims (Counts III-X) Fail For Additional Reasons.

The Court need look no further than ADA preemption to dismiss Plaintiff's consumer fraud and unjust enrichment claims. But if it goes further, these claims fail for additional, independent reasons.

#### i. Plaintiff's Consumer Fraud Allegations Do Not Satisfy Rule 9(b) (Counts IV-X).

To state a fraud claim, Federal Rule of Civil Procedure 9(b) requires a plaintiff to allege "the particular circumstances surrounding [the] representations." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). In other words, the plaintiff must at a minimum "specify which statements the plaintiff actually saw and relied upon." *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018). Plaintiff does not satisfy that threshold requirement as to his consumer fraud claims. Plaintiff vaguely references various statements, but he never alleges *what* statements (if any) he saw or relied upon any alleged misstatement or omission, *when* (if ever) he saw the statements, *how* they supposedly impacted his purchasing decision, or *why* they were allegedly misleading given the Terms. *See* Compl. ¶ 29. Because Rule 9(b) demands more, Counts IV-X fail for this additional reason. *See id.*; *In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *10 (C.D. Cal. Oct. 20, 2014) (plaintiffs must "plead separately and with particularity their individual exposure to the purportedly deceptive advertising campaign so as to put defendant on notice 'what' the alleged misrepresentations were"); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012) (finding plaintiff's allegations insufficient under Rule 9(b) because he "failed to specifically allege that he saw any of the statements that he claims are misleading, or where he saw them, under what circumstances, how they impacted his purchasing decision"); *see also Kearns*, 567 F.3d at 1126 ("[Plaintiff] fails to allege in any of his complaints the particular

circumstances surrounding such representations. Nowhere ... [does he] specify when he was exposed to [the advertisements] or which ones he found material").

### ii. Plaintiff Lacks Standing to Assert Claims Under the Laws of Arizona, Nevada, Utah, and Washington (Counts IV and VIII-X).

In Counts IV and VII to X, Plaintiff alleges Alaska violated consumer protection statues in Arizona, Nevada, Utah, and Washington, respectively. Compl. ¶ 71. But Plaintiff lacks standing to assert claims under any state's law other than California. It is well-settled that "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). It is equally well-settled that "plaintiffs do not have standing to bring claims under the laws of states where they have alleged no injury, residence, or other pertinent connection." *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019) (citations omitted).

Here, Plaintiff alleges he is a resident of California. Compl. ¶ 9. Plaintiff, however, does not allege any injury or other pertinent connection to Arizona, Nevada, Utah, or Washington. Thus, Counts IV and VIII to X fail for lack of standing. *See Debari v. Winix Glob. LLC*, 2025 WL 56414, at *4 (N.D. Cal. Jan. 9, 2025) ("[T]o the extent Plaintiffs seek to bring common law claims under the laws of states other than California, those claims are dismissed without prejudice for lack of standing.") (Corley, J.); *Forrett v. W. Thomas Partners, LLC*, 2023 WL 11991452, at *4-5 (N.D. Cal. Mar. 27, 2023) (dismissing class for states "with similar consumer protection statutes to California" because the plaintiff lacked standing since "he has not and cannot allege a connection to the ten jurisdictions where he does not reside and has not purchased Defendant's products"); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2020 WL 6270948, at *3 (N.D. Cal. Oct. 23, 2020) (dismissing state law claims that lacked a class representative for lack of standing at motion to dismiss stage).

### iii. Plaintiff Lacks Standing to Assert a Nationwide Class under California law (Counts V-VII).

Plaintiff also seeks to represent a nationwide class of subscribers under California law in Counts V-VII. Here again, however, he supports this extraordinary request with no factual allegations to suggest that California law could possibly apply to out-of-state absent class

members' claims. While California's consumer protection laws may be invoked by out-of-state purchasers in some circumstances, the onus is on Plaintiff to first "demonstrate the application of California law comports with due process," which "involves establishing 'sufficient contacts' between the alleged misconduct and the state." *Debari*, 2025 WL 56414, at *5 (quoting *Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290, 1301 (N.D. Cal. 2023). Plaintiff does not even attempt to make this threshold required showing, and thus his nationwide class claims fail for this reason as well. *Id.* ("Plaintiffs do not make sufficient allegations to suggest California law governs the out-of-state absent class members' claims. So, the nationwide class claims are dismissed with leave to amend.") (*citing Hindsman v. Gen. Motors LLC*, 2018 WL 2463113, at *16 (N.D. Cal. June 1, 2018) (similar)).

### iv. Plaintiff's Unjust Enrichment Claim (Count III) is Insufficiently Plead.

Plaintiff's unjust enrichment claim also fails for two additional reasons. First, "[a]s a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010). Here, Plaintiff "alleges an enforceable contract existed between him and [Alaska] but fails to allege that the same contract was unenforceable or void. Accordingly, … he does not adequately plead his unjust enrichment claim." *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1057 (N.D. Cal. 2021) (collecting cases).

Second, in California, a "plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract [unjust enrichment] theory (an election referred to at common law as 'waiving the tort and suing in assumpsit')." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004). But as this Court has recognized, plaintiffs seeking restitution under an unjust enrichment theory "for the same alleged conduct under California statutory claims typically cannot proceed under a quasi-contract theory, since they have not waived the tort to sue in assumpsit; rather, they have chosen to sue in tort." *Zeichner v. Nord Sec. Inc.*, 2024 WL 4951261, at *8 (N.D. Cal. Dec. 2, 2024) (Corley, J.).

Here, Plaintiff's unjust enrichment theory is entirely duplicative of his consumer fraud theory, and thus fails for this reason as well. *Id.*; *see also In re Apple and AT&T iPad Unlimited*

*Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (dismissing claim for unjust enrichment as duplicative because "plaintiffs can not assert unjust enrichment claims that are merely duplicative of statutory or tort claims").

## IV.   CONCLUSION

For these reasons, Plaintiff has failed to state a claim and his Complaint should be dismissed. And that dismissal should be with prejudice because the ADA prevents Plaintiff from stating a consumer fraud, unjust enrichment, or other state law claim and the express Terms prevent Plaintiff from amending to state a claim for breach of contract or the implied covenant based on termination of the Program.

Dated: August 19, 2025                                O'MELVENY & MYERS LLP

By: /s/ Mark W. Robertson
    Mark W. Robertson
    Matthew Kaiser

    *Attorneys for Defendant Alaska Airlines, Inc.*