UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUKE BURTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALASKA AIRLINES, INC.,<br><br>　　　　Defendant. | Case No. 25-cv-06156-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 13 |

Plaintiff brings this putative class action alleging Defendant Alaska Airlines unlawfully changed the terms of its Flight Pass subscription program ("the Program") by unilaterally reducing the number of flights available to subscribers. (Dkt. No. 1 ¶¶ 50, 51.)[1] Plaintiff alleges causes of action for breach of contract and breach of California's implied covenant of good faith and fair dealing; unjust enrichment; and violations of consumer protection statutes in Arizona, California, Nevada, Utah, and Washington. Defendant moves to dismiss Plaintiff's claims.

For the reasons set forth below, and after having had the benefit of oral argument on November 20, 2025, the Court GRANTS Defendant's motion, without leave to amend. The Program's Terms and Conditions expressly authorized Defendant to modify or terminate the Program at any time, and under California law, Defendant's exercise of this right is not constrained by the implied covenant of good faith and fair dealing. Additionally, Plaintiff does not oppose dismissal of Counts III–X.

**FACTUAL BACKGROUND**

According to the Complaint, Defendant launched its Flight Pass program in February

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

2022. (Dkt. No. 1 ¶ 14.) Under the Program's Terms and Conditions, subscribers received two flight credits per month in exchange for a monthly, non-refundable fee of $189. (*Id.* ¶¶ 15, 16.) A person who subscribed to the Program agreed to a mandatory 12-month term, *i.e.*, 24 credits over 12 months. (*Id.* ¶ 14-17; Dkt. No. 13-3 at 2.) Plaintiff signed up for the Program in July 2024 and began paying the non-refundable fee of $189 per month. (Dkt. No. 1 ¶ 9.)

In September 2024, Defendant announced changes to the Program, cutting the number of available flights under some subscription plans. (*Id.* ¶¶ 4, 30-33.) In particular, Defendant "announced that on October 1, 2024, it would 'retire the current Flight Pass plan' and offered Subscribers the option to update their subscription to a 6-flights-per year or 12-flights-per-year plan at a lower rate than new subscribers, regardless of how many months remained in their annual commitment. This change required Subscribers to contact Alaska Airlines by November 30, 2024, to lock in the new rates." (*Id.* ¶ 31.) The email told subscribers their September 2024 flight credits were "still available for booking through the existing system until September 30, 2024," and if the subscriber did not contact Defendant by the end of November, the subscriber's plan was cancelled effective December 1, 2024 "with no penalties or action needed by [the subscriber]." (Dkt. No. 13-4 at 2.) Plaintiff alleges the reduction in available flights "depriv[ed] Plaintiffs and Class Members of the essential benefits they bargained for" and "frustrated the core purpose of the Flight Pass Program … which was to lock in a certain number of flights at a predictable cost." (Dkt. No. 1 ¶¶ 35, 58.)

## DISCUSSION

Defendant's motion argues (1) the Airline Deregulation Act ("ADA") preempts Counts III through X, and (2) Plaintiff's breach of contract and breach of the implied covenant claims fail as a matter of law because the Program's terms expressly authorized Defendant to unilaterally change the Program's terms at any time.

### I. Counts III-X Are Dismissed Without Leave to Amend

As a preliminary matter, Plaintiff's opposition does not address Counts III through X, and "Plaintiff does not seek leave to amend Counts III – X." (Dkt. No. 19 at 23 n.4.) Accordingly, the Court GRANTS Defendant's motion to dismiss as to Counts III through X, without leave to

1   amend.  So, only the contract claims remain for decision.

## II. Incorporation by Reference

Defendant moves to incorporate by reference three exhibits.  (Dkt. No. 13 at 7, 8.)  While district courts generally "may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)," the doctrine of incorporation-by-reference is an exception to this rule.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Although "mere mention of the existence of a document is insufficient to incorporate the contents of a document, the document is incorporated when its contents are described and the document is integral to the complaint."  *Tunac v. United States*, 897 F.3d 1197, 1207 (9th Cir. 2018) (cleaned up).  Both conditions are satisfied for Exhibits A and B, the terms and conditions of the Flight Pass program prior to Defendant's alleged modifications.  (Dkt. Nos. 13-2, 13-3.)  Plaintiff does not object to these exhibits.  (Dkt. No. 19 at 6 n.1.)  So, the Court incorporates these documents by reference.  (Dkt. Nos. 13-2, 13-3.)  Exhibit C, the email announcement Defendant sent to Plaintiff, is also incorporated by reference; indeed, Plaintiff quotes the email in his complaint nearly word-for-word.  (*Compare* Dkt. No. 1 ¶ 31, *with* Dkt. No. 13-4 at 2.)[2]  Plaintiff also relies on the email announcement in his opposition.  (Dkt. No. 19 at 8.)[3]

---

[2] Plaintiff's complaint alleges "Alaska Airlines announced that on October 1, 2024, it would 'retire the current Flight Pass plan' and offered Subscribers the option to update their subscription to a 6-flights-per-year or 12-flights-per-year plan at a lower rate than new subscribers, regardless of how many months remained in their actual commitment. This change required Subscribers to contact Alaska Airlines by November 30, 2024, to lock in the new rates."  (Dkt. No. 1 ¶ 31.)  This paragraph mirrors Exhibit C, which states "[a]s of October 1, 2024, we are retiring your current plan," then explains the recipient must "[c]ontact … Alaska Airlines … by November 30, 2024 to update your subscription and lock in the 6-flights-per-year or 12-flights-per-year option at a lower rate than new subscribers."  (Dkt. No. 13-4 at 2.)  The email and the complaint say the same information and dates, have similar verbiage such as "retiring" the "current" plan and "locking in" rates "at a lower rate than new subscribers," and even use the same hyphenated phrase "6-flights-per-year or 12-flights-per-year."  (*Id.*; Dkt. No. 1 ¶ 31.)

[3] Plaintiff's opposition acknowledges "[t]he factual allegations, which must be taken as true, are drawn from the complaint and the exhibits filed with Defendant's motion."  (Dkt. No. 19 at 6 n.1.) Later in the opposition, Plaintiff objects to Defendant's reliance on the email, but the substance of Plaintiff's objection is unclear.  Plaintiff's objection is in a footnote to the sentence "Plaintiff's common law breach of contact [sic] claim is not preempted," (*id.* at 11), but Defendant never argued this claim was preempted.  (Dkt. No. 13 at 9-13.)  Plaintiff's footnote states "[d]isputed documents … cannot be used to override well-pled allegations," but does not identify any instance where Defendant improperly relied on Exhibit C.  (Dkt. No. 19 at 11 n.2 (citing *Khoja*, 899 F.3d at 1002–03).)  Defendant's motion cited Exhibit C only as background, and at no point did Defendant's citations contradict any well-pled factual allegations.  (*Compare* Dkt. No. 13 at 8,

**III. Motion to Dismiss**

The elements of a breach of contract action under California law are: "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000) (italics removed). Accordingly, the elements of a good-faith-and-fair-dealing claim are the same as a claim for breach of contract, except that the breach element requires "the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract." *Codding v. Pearson Education, Inc.*, 2018 WL 4501131 *8 (N.D. Cal. Sept. 18, 2018).

Plaintiff contends the Flight Pass Program is a contract Defendant breached when it "unilaterally changed the material terms" of the Program because the changes "substantially reduced the number of flights available to Subscribers … while retaining the payments made by Subscribers based on the original, more favorable terms." (Dkt. No. 1 ¶ 50.) Defendant's changes allegedly breached the implied covenant of good faith and fair dealing because "altering the fundamental terms of the Flight Pass program mid-subscription … depriv[ed] Plaintiffs and Class Members of the essential benefit s they bargained for" and "frustrated the core purpose" of the Program. (*Id.* ¶ 58.) Regarding damages, Plaintiff alleges Defendant's changes to the program "forc[ed him] to incur additional costs to book flights that were no longer covered under the revised terms, and make significant alterations to [his] existing travel plans." (Dkt. No. 1 ¶¶ 9, 34, 35.) Defendant moves to dismiss on the grounds the Program's Terms and Conditions expressly gave it the right to unilaterally modify or terminate the Program, even in the midst of a consumer's one-year subscription; so, there was no breach as a matter of law. The Court agrees.

The Program's Terms of Use state at the very beginning:

> Alaska Airlines reserves the right to interpret and apply these conditions of membership in its sole discretion. Alaska Airlines'

*with* Dkt. No. 1 ¶¶ 31–33, 50, 58.) So, the Court overrules Plaintiff's objection.

4

Flight Pass program may be modified or terminated by Alaska Airlines at any time.

(Dkt. No. 13-2 at 2.) So, they give Defendant the right to modify or terminate the program at any time. The California Supreme Court has held a clause that gives one side "absolute and sole discretion" to terminate a contract has "no ambiguity." *Steiner v. Thexton*, 48 Cal. 4th 411, 419 (2010). Indeed, a unilateral escape clause with such "broad and express language" is "not constrained by the implied covenant of good faith and fair dealing" because "the *implied* covenant does not trump an agreement's *express* language" and the defendant's "unfettered power to withdraw at any time for any reason over[rides] any other obligations." *Id.* (italics in original). So, under that plain and unambiguous language, Defendant's modifications to the Program are not a breach of the Program's Terms of Use or the implied covenant of good faith and fair dealing.

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff contends the modification clause renders the contract illusory and unenforceable, citing *Asmus v. Pacific Bell*, 23 Cal. 4th 1, 16 (2000). But *Asmus* did not involve a contract's express unilateral modification/termination provision. Further, it held an implied right to modify or terminate an agreement "was not illusory because plaintiffs obtained the benefits of the [agreement] while it was operable," which made the agreement "fully enforceable until terminated or modified." *Id.* Here, Plaintiff does not allege Defendant failed to provide the Program's benefits while it was in effect. And when Defendant modified the program, it did so "with no penalties or action needed" and still allowed Plaintiff to use existing flight credits. (Dkt. No. 13-4 at 2.) So, even under *Asmus*, the Program was "fully enforceable until terminated or modified." *Id.* Moreover, *Steiner* directly addresses the type of contract language here: an express term providing one side the "sole discretion" to modify or terminate a contract. 48 Cal. 4th at 419. Under *Steiner*, Defendant's "broad and express" unilateral modification clause does not render the contract illusory, nor is the mid-subscription modification or termination "constrained by the implied covenant of good faith and fair dealing" because "the *implied* covenant does not trump an agreement's *express* language." *Id.* (italics in original).

Plaintiff's insistence "California authority makes clear that the implied covenant limits how that power may be exercised so the contract is not rendered illusory and the non-drafting

5

1  party is not deprived of the agreement's benefits" (Dkt. No. 19 at 20), is unhelpful.  The *only*

2  conduct Plaintiff alleges violated the Terms of Use or the implied covenant is terminating his

3  subscription before the end of his 12-month term—conduct expressly permitted by the Terms of

4  Use.  But the implied covenant of good faith "may not give rise to duties or obligations that

5  conflict with the agreement's express terms."  *See Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal.

6  App. 4th 1425, 1463–64 (2012); *see also Serpa v. California Sur. Investigations*, *Inc.*, 215 Cal.

7  App. 4th 695, 707, as modified (Apr. 19, 2013), as modified (Apr. 26, 2013) (observing that in

8  *Peleg*, "because the agreement specifically allowed retroactive modifications, the implied

9  covenant could not be used to vary those express contract terms and limit the employee to

10 prospective amendments only");  *Casas v. CarMax Auto Superstores Cal., LLC*, 224 Cal. App. 4th

11 1233, 1237 (2014) (holding "a modification clause *not providing for advance notice* does not

12 render an agreement illusory, because the agreement also contains an implied covenant of good

13 faith and fair dealing") (emphasis added).  So, the Terms of Use are not illusory and the implied

14 covenant cannot be used to contradict the Terms of Use.

15       Second, Plaintiff urges the unilateral modification clause is inconsistent with the more

16 specific term prohibiting cancellations of subscriptions prior to 12 months.  In particular, Plaintiff

17 relies on the following Terms of Use language:

18
> Flight Pass has a mandatory term of 12 months from activation, during which it cannot be cancelled and is non-refundable. Following the mandatory 12-month period the subscriber may choose to cancel his/her subscription. If cancelled, the subscription will end at the end of the 12-month period. If not cancelled, the subscription will automatically renew for another 12-month term at the then current terms. If the monthly fee of the subscription will be changing at time of renewal the subscriber will be given notice. It is the responsibility of the subscriber to cancel his/her subscription before the renewal date.

24 (Dkt. No. 13-3 at 2.)  Plaintiff contends the sentence "Flight Pass has a mandatory term of 12

25 months from activation, during which it cannot be cancelled and is non-refundable" means

26 Defendant could not unilaterally modify the Program's terms as applied to Plaintiff mid-

27 subscription.  (*Id.*)  But a plain reading of the paragraph's language demonstrates the mandatory

28 term applies to the subscriber alone and not also Defendant.  For example, that the term is "non-

6

refundable" can only apply to the subscriber. (*Id.*) Further, it says the "subscriber" is responsible for cancelling prior to renewal, and "the subscriber" will be given notice if the monthly fee changes. (*Id.*) Further, the final page of the Terms of Use provides:

> The subscription cannot be cancelled during the mandatory period of 12 months. Following the mandatory 12-month period the subscriber may choose to cancel his/her subscription. It is the responsibility of the subscriber to cancel; unless otherwise requested the Flight Pass will continue to renew each year. Payment terms for the new 12-month period, beginning with the 13th month, are subject to change. Any new terms will be communicated to the subscriber in advance of the new term beginning. […]
>
> Alaska Airlines reserves the right to cancel subscriptions for any reason and prevent future sign-ups for any reason.

(Dkt. No. 13-3 at 8.) This final page confirms "[t]he subscription cannot be cancelled *by the subscriber*" during the first 12 months, yet Defendant "reserves the right to cancel subscriptions for any reason and prevent future sign-ups for any reason." (*Id.*) (emphasis added). So, the Terms of Use prohibition on mid-subscription cancellations is not inconsistent with Defendant's right to terminate the Program "at any time" because the prohibition only applies to subscribers. (*See id.*) Defendant's actions are consistent with its rights to "cancel subscriptions for any reason" and "modif[y] or terminate[]" the Flight Pass Program "at any time." (*Id.* at 2, 8.) The Terms of Use do not prohibit Defendant from modifying or terminating the Program or a particular subscription before the subscription's 12-month term expires.

Third, Plaintiff contends the modification clause is ambiguous and therefore it should be construed against Defendant. But there is no ambiguity in the sentences "Alaska Airlines reserves the right to interpret and apply these conditions of membership in its sole discretion. Alaska Airlines' Flight Pass program may be modified or terminated at any time." (Dkt. No. 13-3 at 2.) *Steiner* held as much: "no ambiguity exists here. The agreement plainly gave [Defendant] 'absolute and sole discretion' to cancel the transaction." 48 Cal. 4th at 419. And to the extent there is ambiguity, the parties agreed Defendant has the "sole discretion" to interpret the conditions. (Dkt. No. 13-3 at 2.) Because the contract's unambiguous terms permitted Defendant to modify the Program at any time, even before Plaintiff's subscription ended, Plaintiff cannot state a claim for breach of contract or breach of the implied covenant of good faith and fair

7

dealing.

Accordingly, the Court DISMISSES Counts I and II.

## II. Leave to Amend

Plaintiff requests leave to amend because he "could allege alternative equitable claims such as promissory estoppel, restitution, and quasi-contract – including specific allegations of reliance, unjust enrichment, and the absence of any meaningful alternative remedy." (Dkt. No. 19 at 23.) Plaintiff contends he also "could further clarify Alaska's course of conduct surrounding the October 2024 termination." (*Id.*) Plaintiff does not describe the contours of these claims, nor does he explain what new promises he could allege. (*Id.*)

"The court need not extend the general rule that parties are allowed to amend their pleadings if amendment would be an exercise in futility." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (cleaned up). Here, new allegations regarding Alaska's course of conduct in terminating the Program would be futile because the contract's express terms provide Alaska had "sole discretion" to modify and terminate the contract, meaning Plaintiff's proposed allegations could not constitute a breach of the Program's terms or the implied covenant of good faith and fair dealing. So, the Court does not give Plaintiff leave to amend.

Further, Plaintiff's proposed new claims would be preempted by the Airline Deregulation Act ("ADA"). The ADA states "no state … shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of relating to rates, routes, or services of any air carrier[.]" 49 U.S.C. § 1305(a)(1). The ADA's preemption clause applies to common law claims that are state-imposed obligations within the meaning of Section 1305(a)(1). *Northwest Inc. v. Ginsberg*, 572 U.S. 273, 282–88 (2014). For example, *Ginsberg* held the ADA preempted Minnesota's implied covenant of good faith and fair dealing because "under Minnesota law parties [could not] contract out of the covenant," meaning "the obligation cannot be implied, but is law imposed." *Id.* at 287 (cleaned up). However, the ADA's preemption clause does not apply to suits "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings" because an airline's "terms and conditions … are privately ordered obligations," as opposed to state-imposed obligations. *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–29

8

(1995). So, the ADA does not preempt the contract claims to the extent they are based on Defendant's self-imposed promises.

But the ADA preempts Plaintiff's proposed claims because under California law they are state-imposed obligations within the meaning of *Ginsberg*. "Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred "is an *obligation* (not a true contract []) created by the law without regard to the intention of the parties[.]" *Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008) (cleaned up) (emphasis in original). "The so-called 'contract implied in law' in reality is not a contract. […] Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." *Id.* (cleaned up). In other words, Plaintiff's proposed claims are premised on state-imposed obligations, as opposed to "self-imposed undertakings," and are therefore preempted. *Wolens*, 513 U.S. at 228–29. Plaintiff essentially agreed as much by not opposing dismissal without leave to amend of Count III, which alleged unjust enrichment and restitution. (Dkt. No. 1 ¶¶ 61-67; *see* Dkt. No. 19 at 23 n.4.)

Plaintiff's argument a "'garden-variety claim of promissory estoppel' is not preempted by the Airline Deregulation Act" (Dkt. No. 19 at 23 (quoting *ATA Airlines, Inc. v. Fed. Express Corp.*, 665 F.3d 882, 884 (7th Cir. 2011))) is unavailing. Plaintiff does not describe what promises he could allege, let alone promises that are enforceable given Defendant's ability to modify or terminate the Program "at any time." (Dkt. No. 13-3 at 2.) So, an amendment to add a promissory estoppel claim would be futile.

Finally, Plaintiff cannot allege new facts supporting a breach of the Program's terms. In its email to subscribers, Defendant announced changes to the Program were made "with no penalties or action needed" by Plaintiff and Plaintiff would be able to use his remaining flight credits for September 2024. (Dkt. No. 13-4 at 2.) Plaintiff does not contend otherwise. At oral argument Plaintiff confirmed he received all the flight credits for which he paid. And when the Court inquired as to how he could amend, he could not identify any allegedly wrongful conduct other than he did not get a full 12 months of two flight credits a month. But as the Terms of Use

1  expressly gave Defendant the right to modify the Program's terms at any time, he does not have a
2  claim for breach of contract or breach of the implied covenant of good faith and fair dealing based
3  on Defendant's modification of the Program and termination of his subscription.  So, leave to
4  amend would be futile.

## CONCLUSION

For the reasons set forth above, and drawing all reasonable inferences in Plaintiff's favor, the express terms of the Flight Pass Program establish Defendant did not breach the Program's terms, and the implied covenant of good faith and fair dealing cannot impose a duty that contradicts the Program's express terms.  So, the Court DISMISSES all Counts in Plaintiff's Complaint.  The dismissal is without leave to amend because Plaintiff's opposition and oral argument demonstrate amendment would be futile.  A separate judgment will be entered.

This Order disposes of Docket No. 13.

**IT IS SO ORDERED.**

Dated: December 1, 2025

JACQUELINE SCOTT CORLEY
United States District Judge